NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DEREK TYRONE HARGROVE, JR., | |
| Plaintiff, | |
| v. | No. 24cv6487 (EP) (JSA) |
| TOYOTA MOTOR CREDIT CORPORATION, | **OPINION** |
| Defendant. | |

**PADIN, District Judge.**

Plaintiff/Counterclaim Defendant Derek Tyrone Hargrove, Jr. brings federal, state, and common law claims against Defendant/Counterclaimant Toyota Motor Credit Corporation ("Toyota"). D.E. 9 ("Amended Complaint" or "Am. Compl.") ¶¶ 13–37. Toyota brings a counterclaim for breach of contract against Hargrove. D.E. 12 ("Answer") at 8–10. Both parties move for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) against the other. Hargrove moves for summary judgment on his claims and on Toyota's counterclaim. D.E. 61 ("Hargrove's Motion"). Toyota opposes Hargrove's Motion. D.E. 65 ("Toyota's Opp'n"). Hargrove does not reply. *See* Dkt. Toyota also moves for summary judgment on its counterclaim and on Hargrove's claims. D.E. 62 ("Toyota's Motion"). Hargrove opposes Toyota's Motion. D.E. 67 ("Hargrove's Opp'n"). Toyota replies. D.E. 68 ("Toyota's Reply").

The Court decides the matter without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b). For the reasons explained below, the Court will (1) **DENY** Hargrove summary judgment on Hargrove's claims and on Toyota's counterclaim; (2) **GRANT** Toyota summary judgment on Hargrove's claims and on its counterclaim; (3) **DISMISS** Hargrove's claims; (4) **ENTER**

**JUDGMENT** in favor of Toyota against Hargrove in the amount of $121,714.40; (5) **ORDER** the release of the funds held by the Superior Court of New Jersey in partial satisfaction of the judgment;[1] and (6) **PERMIT** Toyota to move for the recovery of attorneys' fees and court costs.

## I.      BACKGROUND

### A.      Factual Background[2]

In May 2019, Hargrove entered into an agreement (the "Agreement") with a dealership to purchase a 2019 Lexus LC500 (the "Vehicle").  Responsive SUMF ¶ 1.  The parties dispute whether the Agreement is properly dated as executed on May 9, 2019, or on May 10, 2019.[3]  *Id.* The material terms between the two versions of the Agreement are the same.  *Id.* ¶ 24.  Hargrove maintains that he executed the Agreement on May 9, 2019.  *Id.* ¶ 1.  Toyota does not substantively disagree.  *See* D.E. 62-7 ("McLin Decl.") ¶¶ 3–4.  Toyota explains that Hargrove executed the Agreement with the dealership who sold him the Vehicle on May 9, 2019 and that the dealership assigned the Agreement to Toyota on May 10, 2019.  *Id.*  As a result, Toyota was not in possession of the May 9 Version of the Agreement.  *Id.*  Instead, Toyota was in possession of the May 10 Version of the Agreement.  *Id.*  The obligations to which Hargrove is subject did not change between the two versions.  *Id.*

Hargrove took title to the Vehicle on May 16, 2019, and did not object to the terms of the Agreement.  *Id.* ¶¶ 4, 9.  Pursuant to those terms, Toyota agreed to finance $125,010.17 at an annual rate of 8.69 percent.  *See* May 9 Version at 2; May 10 Version at 2.  In turn, Hargrove

---

[1] *See infra* Section III.A.

[2] D.E. 67-1 ("Responsive SUMF").

[3] The terms of each party's version of the Agreement are the same.  *Compare* D.E. 47-1 ("May 10 Version"), *with* D.E. 47-2 ("May 9 Version").

2

agreed to make monthly payments of $1,998.79 beginning on June 24, 2019, until the balance was paid in full. *See* May 9 Version at 2; May 10 Version at 2. Toyota submits a record of the payment history for the Vehicle. D.E. 62-10 ("Payment History"). According to the Payment History, Hargrove made an initial payment on July 17, 2019 and made his last payment on December 19, 2022. *Id.* In what may be an attempt to dispute this Payment History, Hargrove includes various financial statements from Bank of America demonstrating his balance between January 1, 2023 and January 31, 2023. D.E. 48-2. Hargrove provides no context for these financial statements and there is no indication from these financial statements that he paid Toyota either the full balance owed or the monthly payments due. *See* D.E. 48-2 at 166–75, 176–85.

Hargrove provides no other evidence that the Court understands to put at issue that Hargrove stopped making payments on the Vehicle and that he still owes Toyota a balance of $121,714.40. *See* Responsive SUMF ¶ 10 (Hargrove citing exhibits that only contest the date on which he executed the Agreement). Indeed, Hargrove admits that Toyota lacks any record of payment from Hargrove or from any third party making payments in satisfaction of the outstanding $121,714.40 debt. *Id.* ¶ 12.

Hargrove instead asserts that Toyota improperly modified the Agreement to post-date it to May 10, 2019. *Id.* ¶¶ 1–3. Hargrove maintains that based on the May 10 Version forgery, Toyota submitted inaccurate information to reporting agencies, which caused him financial harm. *Id.* ¶¶ 6–15. As best as the Court can discern, it appears that Hargrove believes that the difference in dates renders the underlying Agreement void. *See id.*

Hargrove then sued Toyota in New Jersey Superior Court ("State Court") to challenge Toyota's lien on the Vehicle. *Id.* ¶ 17; D.E. 62-2 (including a copy of Hargrove's State Court complaint, filed at *Hargrove v. I/M/O 2019 Lexus LC500*, No. UNN-L-4033-23, at

3

LCV20233578939 (N.J. Super. Ct., L. Div. Dec. 6, 2023) ("State Court Action")). The State Court removed the lien on the Vehicle after Toyota failed to appear (due to improper service). *See* Responsive SUMF ¶¶ 17–20. Hargrove then sold the Vehicle for $40,000. *Id.* ¶ 19. Toyota later learned of the action, appeared in the case, and successfully petitioned the State Court to vacate the prior order and order the $40,000 proceeds from Hargrove's sale to be set aside during the pendency of Toyota's counterclaim. *Id.* ¶¶ 19–20.

### B.    Procedural History

Following the State Court's order to hold the proceeds from Hagrove's sale of the Vehicle aside, Toyota removed the action from the State Court to this Court, and the parties proceeded to discovery.[4] *See* D.Es. 1 & 15. After completing discovery, the Hon. Jessica S. Allen, U.S.M.J., ordered the parties to file their respective motions for summary judgment. D.E. 60. The parties' motions followed. D.Es. 61 & 62.

Hargrove brings four counts against Toyota. Am. Compl. ¶¶ 17–37. His first cause of action contends that Toyota committed common law fraud by providing a forged version of Hargrove's and Toyota's contract to the State Court and to Hargrove. *Id.* ¶¶ 18–22 ("Count One"). Hargrove's second cause of action contends that Toyota violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 ("NJCFA"), in connection with the sale and financing of the vehicle Hargrove purchased. *Id.* ¶¶ 23–26 ("Count Two"). Hargrove's third cause of action contends that Toyota violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2 ("FCRA"), by reporting inaccurate and false information about Hargrove's loan to consumer reporting agencies. *Id.* ¶¶ 27–

---

[4] Diversity jurisdiction is satisfied here. Hargrove is a citizen of New Jersey. D.E. 1 ¶ 3. Toyota is a citizen of California and Texas. *Id.* ¶ 2. Because there is diversity of citizenship between the Hargrove and Toyota, and because the amount in controversy exceeds $75,000, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 and Toyota properly removed the case to this Court pursuant to 28 U.S.C. § 1441.

32 ("Count Three").  Hargrove's fourth cause of action contends that Toyota violated 18 U.S.C. § 513 by making, possessing, and using a forged version of the Agreement.  *Id.* ¶¶ 33–37 ("Count Four").

Toyota brings one counterclaim against Hargrove:  breach of contract.  Answer at 8–10.  Toyota claims that Hargrove entered into an agreement with a dealership for the sale of a vehicle, for which Hargrove still owes $121,714.40.  *Id.* ¶¶ 1–3.  Toyota, as assignee of the contract, seeks to enforce the contract and collect the debt owed, reasonable attorneys' fees, and court costs.  *Id.* ¶¶ 3, 7.

## II.    LEGAL STANDARD

Courts should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The substantive law governing the dispute will determine which facts are material, and only disputes over those facts 'that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  *DeHart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 248).

The movant bears the initial burden of showing the basis for its motion and demonstrating that no dispute of material fact exists.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant must support its position by citing to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R.

5

Civ. P. 56(c)(1)(A).  Once the movant identifies evidence in support of its motion for summary judgment, the nonmovant must then counter with evidence that demonstrates there is a genuine issue of fact.  *Big Apple BMW, Inc. v BMW of N. Am., Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992).  The Court must then view the evidence in the light most favorable to the non-moving party and determine whether a genuine dispute exists.  *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).

## III.    ANALYSIS

The only fact Hargrove takes issue with is the *date* on which he agreed to purchase the Vehicle.  He does not contest that he agreed to purchase the Vehicle or that Toyota agreed to finance it for $125,010.17 at an annual interest rate of 8.69 percent.  *See supra* Section I.A.  Nor does he contest Toyota's claims that an outstanding debt on the Vehicle remains in the amount of $121,714.40.  *Id.*  Because Hargrove fails to raise any genuine issue of material fact, the Court will (1) **DENY** Hargrove summary judgment on his claims and on Toyota's counterclaim; (2) **GRANT** Toyota summary judgment on Hargrove's claims and on its counterclaim; (3) **DISMISS** Hargrove's claims; (4) **ENTER JUDGMENT** in favor of Toyota against Hargrove in the amount of $121,714.40; (5) **ORDER** the release of the funds held by the Superior Court of New Jersey in partial satisfaction of the judgment; and (6) **PERMIT** Toyota to move for the recovery of attorneys' fees and court costs.

### A.    Toyota is Entitled to Summary Judgment on its Counterclaim

Toyota is entitled to summary judgment on its counterclaim against Hargrove for breach of contract.  To establish a breach of contract claim in New Jersey, "a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the

contract, and the breach caused the claimant to sustai[n] damages." *EnviroFinance Grp., LLC v. Env't Barrier Co., LLC*, 440 N.J. Super. 325, 345 (App. Div. 2015).

        *1.     Validity*

There is no dispute that the Agreement is valid. The parties dispute only the date on which the Agreement was executed,j but regardless of the date, Hargrove agreed to incur a $125,010.17 loan, subject to an annual interest rate of 8.69 percent. May 9 Version at 2; May 10 Version at 2. He also agreed to make monthly payments of $1,998.79 beginning on June 24, 2019, until his balance was paid off. May 9 Version at 2; May 10 Version at 2. And Hargrove himself agrees that the May 9 Version of the Agreement is an "enforceable agreement." Hargrove Opp'n at 3. He also admits that he made some monthly payments pursuant to the Agreement. *See* Responsive SUMF ¶ 2 (disputing Toyota's representations that Hargrove made payments pursuant to an agreement executed on May 10, 2019, by stating that Hargrove made payments pursuant to an agreement executed on May 9, 2019). There is therefore no dispute that the debt Toyota complains of is a valid and enforceable one under the terms that Hargrove agreed to.[5]

Hargrove responds to this argument by contending that a digital forensic expert concluded that there were alterations between the May 9 Version and the May 10 Version of the Agreement. But there are two issues with Hargrove's reliance on this digital forensic expert. *First*, the expert identifies no alteration between the May 9 Version and the May 10 Version of the Agreement that is germane to any issue in this litigation. *See* D.E. 48-2 at 1–9 (noting differences in "font kerning and font size" and different creation times for the PDFs at issue). To the extent that Hargrove

---

[5] Both versions of the Agreement further include provisions requiring that Hargrove must pay for reasonable attorneys' fees and court costs if Toyota must "hire an attorney who is not [its] salaried employee to collect what [Hargrove] owe[s]." May 9 Version at 3; May 10 Version at 3. The Court will therefore **PERMIT** Toyota to brief its entitlement to reasonable attorneys' fees and court costs.

believes that Toyota improperly post-dated the Agreement, such post-dating—even if true—would still not relieve Hargrove of his performance obligations. *See Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.*, No. 12-3427, 2014 WL 268652, at *12 (D.N.J. Jan. 23, 2014) (finding that although the parties signed different offer letters, they both agreed to certain terms because those terms appeared in both offer letters and because the parties performed in a manner consistent with those terms). Hargrove identifies no authority, and this Court can find none, permitting a purchaser to take title to goods without paying for them on grounds that the seller misdated an immaterial term within a purchase agreement.[6] Because no purported alteration concerns the terms at issue here, Hargrove's reliance on this expert report therefore fails to raise a *material* dispute.

*Second*, Hargrove contends that the expert concluded that the May 10 Version of the Agreement was "fabricated," Hargrove's Opp'n at 2, but the expert explicitly stated "no opinion can be expressed as to the creation or alteration" of either the May 9 Version or the May 10 Version and that without the native files for either document, "the question of tampering or editing the PDF files is not able to be completed within any reasonable degree of scientific certainty," D.E. 48-2 at at 9. Hargrove therefore misrepresents the conclusions of his expert. Thus, Hargrove also fails to raise a *genuine* issue of even an immaterial fact. Accordingly, there is no dispute regarding the Agreement's validity. May 9 Version at 2; May 10 Version at 2.

>  2.    *Nonperformance and damages*

There is also no dispute that Hargrove failed to perform under the terms of the Agreement. As explained above, the Agreement required that Hargrove pay a balance of $125,010.17 for the

---

[6] There is no contention that the *date* of the Agreement had any bearing on the obligations described within. Monthly payments, for example, were still set to begin on June 24, 2019. May 9 Version at 2; May 10 Version at 2. And Hargrove admits that he took title to the Vehicle on May 16, 2019. Responsive SUMF ¶ 9.

Vehicle, subject to an annual interest rate of 8.69 percent, by making monthly payments of $1,998.79 beginning on June 24, 2019.  May 9 Version at 2; May 10 Version at 2.

Toyota produces competent evidence indicating that Hargrove made several payments on the Vehicle's balance, the last of which appears to have been on December 19, 2022.  Payment History.  According to the Payment History, Hargrove still owes a balance of $121,714.40.  *Id.*  In response to Toyota's evidence, Hargrove merely maintains that the Agreement was not executed on May 10, 2019.  *See, e.g.*, Responsive SUMF ¶¶ 2 ("Plaintiff took delivery and made payments pursuant to the May 9, 2019 contract."), 5 ("Plaintiff denies any default under a contract never executed."), 10 ("Plaintiff disputes any remaining balance as alleged by [Toyota]; the amount claimed is based on a fabricated contract.").  Hargrove presents no evidence to show that he has submitted any payment to Toyota after December 19, 2022.  *See id.*  Indeed, nowhere does Hargrove even contend that he submitted the obligatory payments due.  *See generally* Hargrove Motion; Hargrove's Opp'n; *see also* Responsive SUMF ¶ 12 (admitting "for purposes of this motion" that Toyota lacks any record that Hargrove, or any third party, paid the remaining $121,714.40 balance for the Vehicle).

There is therefore no dispute regarding Hargrove's nonperformance under the Agreement and the resulting damages of at least $121,714.40 for payment of the Vehicle, whether the Agreement was executed on May 9, 2019, or on May 10, 2019.  The Court will therefore **DENY** Hargrove summary judgment on Toyota's counterclaim, **GRANT** Toyota summary judgment on the same, **ENTER JUDGMENT** in favor of Toyota in the amount of $121,714.40, and **ORDER** Hargrove to release the proceeds from the sale of the Vehicle in partial satisfaction of the judgment. The parties may propose a briefing schedule to address any attorneys' fees and court costs owed by Hargrove.  *See supra* n.5.

9

**B.      Toyota is Entitled to Summary Judgment on Hargrove's Claims**

Because Hargrove provides no evidence capable of permitting a reasonable jury to conclude that Toyota is liable for Counts One, Two, and Three, and because Hargrove cannot bring Count Four, the Court will **DENY** Hargrove summary judgment on his claims, **GRANT** Toyota summary judgment on Hargrove's claims and **DISMISS** Hargrove's Amended Complaint.

*1.      Count One (common law fraud)*

Hargrove contends that Toyota committed fraud by improperly modifying the Agreement to reflect an execution date of May 10, 2019, rather than the actual execution date of May 9, 2019. Am. Compl. ¶¶ 17–22. To establish common law fraud in New Jersey, a plaintiff must prove "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–74 (2005).

Hargroves identifies no evidence in support of any of the above five required elements for proving fraud. Hargrove fails to show why the date printed on the Agreement was material. Toyota, on the other hand, shows that the relevant terms of the Agreement, *i.e.*, the purchase price, the purchase terms, and the product purchased, remained identical. *Compare* May 9 Version, *with* May 10 Version. Nor does Hargrove point to anything indicating that Toyota intended to mislead Hargrove with respect to the execution date of the Agreement. Indeed, Hargrove points to nothing indicating that Toyota even knew that Hargrove had signed the Agreement on May 9, 2019, instead of on May 10, 2019. Toyota, however, attests that although Hargrove signed the May 9 Version of the Agreement with the dealership, the dealership provided Toyota with only the May 10 Version of the Agreement. *See* McLin Decl. ¶¶ 3–4.

Hargrove also fails to show how he detrimentally relied on the wrong execution date of the Agreement.  Given that all his obligations remained the same between both versions of the Agreement and given that Hargrove appears to have remained in possession of the May 9 Version of the Agreement, it is neither clear how Hargrove could have relied on the May 10 Version nor how reliance on the May 10 Version could have caused him harm.

Hargrove therefore fails to provide any basis on which a reasonable jury could conclude Toyota committed fraud.  The Court will therefore **DENY** Hargrove summary judgment on Count One, **GRANT** Toyota summary judgment on Count One, and **DISMISS** Count One.

 2. *Count Two (statutory fraud)*

Hargrove contends that Toyota committed statutory fraud in violation of the NJCFA  Am. Compl. ¶¶ 23–26.  To establish a violation of the NJCFA, a plaintiff must prove "(1) unlawful conduct by defendant, (2) an ascertainable loss by plaintiff, and (3) a casual relationship between the unlawful conduct and the ascertainable loss." *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 121 (2014).  The loss suffered must be "definite, certain, and measurable," *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 22 (1994), rather than "merely theoretical," *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 558 (2009).

Toyota is entitled to summary judgment on Hargrove's statutory fraud claim because like Hargrove's common law claim, Hargrove has no evidence to support his claim.  Toyota explains that it made no modifications to the Agreement and merely received a version from the dealership that was dated May 10, 2019.  *See* McLin Decl. ¶¶ 3–4.  Hargrove advances no competing version of events to dispute Toyota's version and thus fails to identify any evidence that Toyota engaged in unlawful conduct.  And as explained above, Hargrove produces no evidence indicating that he

11

suffered any damages due to the differing dates on the May 9 Version and the May 10 Version of the Agreement.

Given the lack of evidence to support Hargrove's claim, the Court will **DENY** Hargrove summary judgment on Count Two, **GRANT** Toyota summary judgment on Count Two, and **DISMISS** Count Two.

>    3.    *Count Three (Fair Credit Reporting Act)*

"The FCRA places certain duties on those who furnish information to consumer reporting agencies." *Tauro v. Cap. One Fin. Corp.*, 684 F. App'x 240, 242 (3d Cir. 2017) (quoting *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011)). Those duties include furnishing credit reporting agencies with accurate information. *SimmsParris*, 652 F.3d at 357. Plaintiff alleges that Toyota violated the FCRA by falsely reporting that Hargrove owed a balance on the Vehicle. Am. Compl. ¶¶ 27–32; *see* Hargrove's Motion at 3 ("[Toyota] reported a fabricated debt to consumer reporting agencies, causing documented financial harm."). Toyota is entitled to summary judgment on this claim.

It is Hargrove's burden to prove his FCRA claim. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 709–10 (3d Cir. 2010). But as explained above, Hargrove fails to supply any evidence to dispute that the claimed $121,714.40 debt remains outstanding. *See* Responsive SUMF ¶¶ 2 ("Plaintiff took delivery and made payments pursuant to the May 9, 2019 contract."), 12 (admitting "for purposes of this motion" that Toyota lacks any record that Hargrove, or any third party, paid the remaining $121,714.40 balance for the Vehicle).

Because Hargrove fails to raise any dispute regarding the existence and accuracy of the debt owed, his FCRA claim necessarily fails. Accordingly, the Court will **DENY** Hargrove

12

summary judgment on Count Three, **GRANT** Toyota summary judgment on Count Three, and **DISMISS** Count Three.

          4.      *Count Four (18 U.S.C. § 513 forgery)*

Hargrove attempts to bring an action under 18 U.S.C. § 513.  Am. Compl. ¶¶ 33–37.  18 U.S.C. § 513 is a criminal statute and criminal statutes are enforceable only by the United States.  *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994).  Because there is no private right of action available to Hargrove, *see Leeke v. Timmerman*, 454 U.S. 83, 85–87 (1981) (holding that private parties cannot enforce criminal laws), the Court will **DENY** Hargrove summary judgment on Count Four, **GRANT** Toyota summary judgment on Count Four, and **DISMISS** Count Four.

## IV.    CONCLUSION

Having determined that Hargrove raises no genuine issue of material fact with respect to any of his claims or Toyota's counterclaim, the Court will (1) **DENY** Hargrove summary judgment on his claims and on Toyota's counterclaim; (2) **GRANT** Toyota summary judgment on Hargrove's claims and on its counterclaim; (3) **DISMISS** Hargrove's claims; (4) **ENTER JUDGMENT** in favor of Toyota against Hargrove in the amount of $121,714.40; (5) **ORDER** the release of the funds held by the Superior Court of New Jersey in partial satisfaction of the judgment; and (6) **PERMIT** Toyota to move for the recovery of attorneys' fees and court costs.  An appropriate Order accompanies this Opinion.

Dated: April 13, 2026

                                       Evelyn Padin, U.S.D.J.